IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Eddie Mack, | : | |
| Plaintiff | : | Case No.  2:06-cv-102 |
| v. | : | Judge Marbley |
| Reginald Wilkinson, et al., | : | Magistrate Judge Abel |
| Defendants | : | |

## ORDER

Plaintiff Eddie Mack brings this action under 42 U.S.C. § 1983 alleging Eighth
Amendment violations by prison officials. This matter is before the Court on Plaintiff's
objections (doc. 158) to the Magistrate Judge's Report and Recommendation (doc. 151).
For the reasons below, Plaintiff's objections are OVERRULED.

**Background**

In the Complaint, Plaintiff Eddie Mack, makes the following allegations. He is an
inmate at Chillicothe Correctional Institution (CCI). (Doc. 3, Complaint, p. 5.) On June
29, 2005, while incarcerated at CCI, he was struck by lightening while playing softball
on the north field at CCI. (Doc. 3, p. 5.a.) Defendant Scott Tomlinson was supervising
the game. (*Id.*) Over the objection of Plaintiff and other inmates, Tomlinson ordered the
game to continue despite an imminent thunderstorm. (*Id.*) Tomlinson told the inmates
that if they left the field they would forfeit the game. (*Id.*) Defendants provided him
with negligent medical care which caused him mental, emotional, and physical

1

discomfort. (*Id.*) Because of the lack of appropriate medical care Mack's health continues to be at risk. (*Id.*)

Although it is disputed whether Mack was injured, (doc. 116, p. 17), it is undisputed that on June 29, 2005, lightening hit the north ball field at CCI and some inmates and CCI employees were injured. (*See* Doc. 3; Doc. 116-14, Ex. D, ¶ 15, Declaration of Scott Tomlinson.)

On July 25, 2006, Defendants Reginald Wilkinson, Timothy Brunson, and John Doe were dismissed and the claims against Defendants Scott Tomlinson and Dr. James McWeeney were allowed to continue. (Doc. 18, p. 3.) On July 9, 2007, Defendants Tomlinson and McWeeney moved for summary judgment, (doc. 116), which Plaintiff opposed (doc. 132). The Magistrate Judge issued a Report and Recommendation, which recommends that Defendants' motion for summary judgment be granted. (Doc. 151.) Plaintiff then filed a motion objecting to the Report and Recommendation. (Doc. 157.) Defendants Tomlinson and McWeeney responded, but they did not address Plaintiff's specific objections. (See Doc. 158.)

Defendant Tomlinson is employed at CCI as an activity therapist. (Doc. 67-4, Ex. 34, Quest. 1.) Mack testified on deposition that Tomlinson told the inmates that they would forfeit the softball game if they left the field. (Doc. 40, Depo., p. 17.) Plaintiff offered the sworn statements of inmates Grooms, Collins, Pipkin, and Teague, which support his allegation that Tomlinson told the inmates that leaving the filed constitutes forefeiture and that he ignored their plea to leave. (Doc. 67, Ex. 37-40.)

2

Tomlinson's response to Plaintiff's interrogatories asserts that he did not threaten forfeiture, he was not asked to call the game, and he did not tell the inmates to continue the game. (Doc. 143-2, Def. Ex. A-1, Quest. 4-5, 10.) His response also asserts that he called the game on June 29, 2005, on the first sighting of lightening, (*id.* at Quest. 10), and not after seeing several bolts of lightening earlier as the Complaint alleges (see doc. 3, p. 5.a.) Defendant Tomlinson offered the statements of inmates Ortiz and Boyer, which corroborate his position that he was not asked to call the game and he did not threaten forfeiture. (Doc. 143-3, Def. Ex. B-C.) At the time that the lightening struck, Defendant Tomlinson was at the back stop and not under cover. (*See* Doc. 40, Depo., pp. 17, 23.)

Defendant McWeeney served between 2003 and 2005 as Chief Medical Officer at CCI. (Doc. 67-6, Ex. 36, Quest. 1.) Mack testified on deposition that McWeeney refused to give him medical treatment, schedule him to see a specialist, or to issue him a cane, and that McWeeney is a quack and unprofessional. (Doc. 40, Depo., pp. 33-34, 42-43.) The Complaint pleads that his injuries were a knot on his right thigh the size of a softball, pain in his feet, back, and neck, muscle spasms, disorientation, and tingling and surges of pain throughout his body. (Doc. 3, p. 5.b.) Mack also testified that his injuries from the lightening strike were a softball size knot on his thigh, a tingling sensation throughout his body, pain in his neck, and disorientation. (Doc. 40, Depo., p. 25.) A nurse's treatment notes from June 29, 2005, indicate that the objective physical findings were a three inch lump on Mack's right thigh. There were no visible burns. (Doc. 116-9,

3

Ex. B-1, p. 50.)

As to Defendant Tomlinson, the Report and Recommendation held that Plaintiff

had not presented evidence that, if credited, would prove either the objective or

subjective element of an Eight Amendment claim. The objective element requires a

Plaintiff to prove that the Defendant subjected him to a "sufficiently serious," "extreme

deprivation" that denies "the minimal civilized measure of life's necessities." *Farmer v.*

*Brennan,* 511 U.S. 825, 832-834 (1994); *Hadix v. Johnson,* 367 F.3d 513, 525 (6th Cir. 2004).

Report and Recommendation, pp. 9-10. Threatening an inmate with the forfeiture of a

softball game is not threatening a sufficiently serious deprivation. Alternatively, if the

deprivation was exposing the inmates to lightening, Plaintiff cannot prove that was

Tomlinson's intent since Tomlinson exposed himself to the very same risk.

As to Defendant McWeeney, the Report and Recommendation held that Plaintiff

has failed to offer evidence from which a tier of fact could find by a preponderance the

doctor deliberately denied Mack treatment for serious medical need.

**Plaintiff's Objections**

Plaintiff Eddie Mack first objects to the Magistrate Judge's treatment of

inconsistencies in the record. (Doc. 157, p. 1.) Mack argues that the Report and

Recommendation ("R&R") ignores Defendants' inconsistencies. The R&R recommends

that Defendants' motions for summary judgment be granted. In arriving at this

conclusion the R&R viewed the inconsistencies as irrelevant to the disposition of the

case. The summary judgment standard requires that there should be "no genuine issue

4

as to any material fact." Fed. R. Civ. P. 56(c). Therefore, Plaintiff's objection is OVERRULED.

As a related objection, Plaintiff contends that the Magistrate Judge failed to consider evidence submitted to the Court. (Doc. 157, p.1.) The Report and Recommendation explains that Mack referred the Court to evidence not in the record and that Plaintiff failed to attach to his motion in opposition to summary judgment the documents to which he was referring. (Doc. 151, p. 16.) In the motion requesting an extension of time to file an objection to the Report and Recommendation, Mack explained that he made a mistake in directing the Court to the evidence he referred to in his motion in opposition to Defendants' motion for summary judgment. (Doc. 153, p. 1.) He explained that he was referring to docket entry 67 when it should have been docket entry 71. (*Id.*) Since the Magistrate Judge was not "obligated to wade through and search the entire record," Plaintiff's objection is OVERRULED. See *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

Plaintiff also objects to the Magistrate Judge granting Defendants a motion for extension of time while denying his request (docket entry 126) for an extension. (Doc. 157, p. 2.) As an initial matter, Plaintiff does not explain how this objection relates to the Report and Recommendation. (*See id.*) After a flurry of motions requesting extension of time, the Magistrate Judge did issue an order which explains that the "parties are warned that there will be no more extension of time motions granted with respect to dispositive motions." (Doc. 121.) Plaintiff's subsequent motion (doc. 126) was denied

5

pursuant to that Order (doc. 129). A month later the Magistrate Judge granted
Defendants a one week extension of time after Defendants' counsel explained that
because of the urgent medical needs of her mother and having to assist with funeral
arrangements for a close friend she needs a one week extension. (Docs. 133, 134.) After
Plaintiff filed a notice of appeal to the Sixth Circuit, Defendants were granted another
extension of time. (Doc. 137.) Plaintiff subsequently filed two motions for extension of
time. The first one was denied because Mack was required to move the Court for leave
to respond to Defendants' reply under Local Rule 7.2 instead of merely seeking an
extension of time. (Doc. 147.) The Magistrate Judge granted Plaintiff's other motion
requesting an extension of time. (Doc. 154.) Under the facts and circumstances, the
Court cannot say that Mack was treated unfairly. Thus, Plaintiff's objection is
OVERRULED.

Plaintiff next objects to the Report and Recommendation analysis of forfeiture.
(Doc. 157, p. 2.) Mack argues that the case is not about forfeiture, rather it is about
Defendants Tomlinson's and McWeeney's deprivation of Plaintiff's constitutional rights
to be protected from injury and unnecessary infliction of pain. (*Id.*) The Report and
Recommendation does not contain an analysis of forfeiture with respect to Defendant
McWeeney. It does explain that forfeiture of a game was not a sufficiently serious
deprivation, as a matter of law, to trigger Eight Amendment concerns with respect to
Tomlinson. (Doc. 151, p.11.) Plaintiff claims that the consequence for leaving the game
despite an impending thunderstorm was Tomlinson's threatened forfeiture of the game.

6

(Doc. 3, p. 5.a.; Doc. 40, Depo., p. 17.) Mack also offered the statements of inmates Grooms, Pipkin, Teague, and Collins to support this allegation. (Doc. 67, Ex. 37-40.) Therefore, by Plaintiff's own allegations and evidence, the punishment for leaving was forfeiture of the game. The Report and Recommendation properly concluded that, as a matter of law, forfeiture of a game is not a "sufficiently serious" deprivation to trigger Eight Amendment concerns. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted); *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (explaining that sufficiently serious deprivations are extreme deprivations) (internal citation omitted). Plaintiff's objection is OVERRULED.

Plaintiff further objects to the Magistrate Judge allowing Defendants to present Tomlinson's second declaration which contradicts the first one. (Doc. 157, p. 4.) Indeed, Tomlinson's second declaration is inconsistent with his first. The second declaration attempts to correct an alleged misstatement in the first. (See Doc. 143-2, Ex. A, ¶ 8, Ex. A-1, ¶ 21.) In the first declaration Tomlinson stated that he first saw lightening at the top of the eight inning. (Doc. 143, Ex. A-1, ¶ 21.) In the second declaration Tomlinson sought to clarify that he meant to say he first saw lightening at the bottom of the eight inning. (Doc. 143, Ex. A, ¶ 8.) This inconsistency does not affect granting summary judgment with respect to Tomlinson. As explained above, Plaintiff did not show a "sufficiently serious" deprivation to trigger Eight Amendment concerns. Likewise, Plaintiff's contention that he offered eleven different individuals who spotted lightening before lightening struck the north ball field (doc. 157, p. 4) does not affect

7

granting summary judgment with respect to Tomlinson. Accordingly, Mack's objection is OVERRULED.

Plaintiff objects to what he refers to as the Magistrate Judge giving his personal opinion. (Doc. 157, p. 20.) Plaintiff argues that the Report and Recommendation states that Defendant Tomlinson has produced evidence that some inmates complain when games are called. (*Id.*) Plaintiff takes the position that this is clearly speculative and amounts to the Magistrate Judge rendering his opinion. (*Id.*) The Report and Recommendation does state that an inmate testified that in the past players complained when games were called. (Doc. 151, pp. 3, 12.) However, the Court cannot say that the Magistrate Judge was speculating and rendering his own opinion because Defendants did offer evidence that inmates complained in past when games were called. (See Doc. 143-3, Ex. B, Declaration of Ortiz.) Therefore, Plaintiff's objection is OVERRULED.

Plaintiff also objects to the Magistrate Judge's analysis of deliberate indifference with respect to Defendant Tomlinson. (Doc. 157, p. 21.) Plaintiff argues that the Report and Recommendation position that Defendant Tomlinson was subjected to the same risks as those inmates who were injured negates Tomlinson's deliberate indifference is erroneous. (*Id.*) Plaintiff's argument misstates the Report and Recommendation's analysis. The Report and Recommendation does not state that because Tomlinson exposed himself to lightening there was no deliberate indifference on his part. Rather, it explains that Plaintiff Mack failed to come forward with evidence to meet his burden to show that Tomlinson was aware of a substantial risk of serious harm and actually drew

8

the inference that the Mack was at substantial risk of serious harm. (Doc. 151, p. 12.) It

further explains that Defendant Tomlinson provided the Court with evidence that

warrants an inference contrary to Plaintiff's allegations. (*Id.*) Further, even if there was

"deliberate indifference," Tomlinson would still be entitled to summary judgment

because, as explained above, there wasn't a sufficiently serious deprivation. *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hadix*, 367 F.3d at 525.

Plaintiff made two other objections which must be dealt with together because

they arise out of related allegations and facts. First, Plaintiff objects to the presentation

of altered evidence and false testimony by Defendant McWeeney to the Court. (Doc.

157, pp. 11-15.) Second, Mack objects to the Report and Recommendation's position that

his medical treatment does not amount to an Eight Amendment violation. (*Id.*) The

record before the Court includes declarations (doc. 116-6, Ex. B), admissions (doc. 67-5,

Ex. 35), and interrogatories (doc. 67-6, Ex. 36) of McWeeney. McWeeney declared that

he saw Plaintiff on three occasions: July 5, 2005, July 19, 2005, and May 22, 2006. (Doc.

116-6, Ex. B, ¶¶ 8, 10, 12.) His declaration explains that Mack was seen by nurses on

June 29, 2005, after lightening struck. (*Id.* at ¶ 7.) According to McWeeney, on the third

visit, May 22, 2006, he ordered Mack to be maintained on Motrin, Neurotin, and Elavil.

(*Id.* at ¶ 12.) Plaintiff contends that this last declaration amounts to false testimony

because the consultation request which lists Motrin, Neurotin, and Elavil (doc. 116-7,

Ex. B-1, p. 9) only informs the physician of the current medication that the inmate is

already taking. (Doc. 157, pp. 14-15.) Mack further points out that Dr. Thurston ordered

the medication. (*Id.*; Doc. 71-3, Ex. 122.) Although the record is not entirely legible, Plaintiff's analysis reveals an inconsistency between Dr. McWeeney's declaration and other evidence in the record.

Plaintiff also accuses Defendant McWeeney of altering the dates on the medical records. (Doc. 157, pp. 11-12.) Mack argues that Defendant McWeeney did nothing on July 5, 2005, as indicated on Exhibit 79 to docket entry 71 because the date that McWeeney saw him was altered. (*Id.* at p. 12.) Mack contends that all medical entries made by McWeeney contain altered dates. (*Id.*) Mack argues that the medical staff at CCI uses the SOAP Documentation Format (doc. 71-2, Ex. 43), which requires initials or the word "error" next to corrections made. (Doc. 157, pp. 11.) He accuses McWeeney of not complying with this protocol. (*Id.*)

Even if the Court were to assume that the dates on which Plaintiff was treated were altered in the medical records submitted by Defendant, or there was inconsistent testimony, Mack's medical treatment does not trigger an Eight Amendment violation. The Report and Recommendation has a detailed analysis of Plaintiff's Eight Amendment cruel and unusual punishment claim for denial of medical care. (Doc. 151, pp. 13-16.) As the Magistrate Judge pointed out, a mere difference of opinion on the course of medical treatment between the inmate patient and the physician does not automatically trigger an Eight Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. Sept. 6 2006) (unpublished); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). As indicated in the

various documents submitted to the Court, Plaintiff's grievance is basically that he

should have received the treatment that he desired. (*See e.g.*, Doc. 8-2, Ex. 1, Informal

Complaint; Doc. 40, Depo., pp. 34-43.) McWeeney's treatment of Plaintiff's medical

condition was based on his medical judgment on the source of Plaintiff's injuries. (Doc.

67, Ex. 36, Quest. 10, 17.) His declared understanding of Plaintiff's condition was

medical injuries compatible with a fall to the ground and not that Mack was hit by

lightening. (*Id.* at Quest. 17; Doc. 116-6, Ex. B, ¶¶ 15-16.) His diagnosis of Plaintiff's

condition was made in light of Plaintiff's previous medical history and injuries

sustained by other inmates and correctional officers.

Accordingly, Plaintiff's objections (doc. 158) are **OVERRULED**. The Court

**ADOPTS** the Report and Recommendation (doc. 151). The Clerk of Court is

**DIRECTED** to enter final judgment.

> s/Algenon L. Marbley
> United States District Judge